AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
10/10/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: RYO  DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
10/10/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: TS  DEPUTY

United States of America

v.

CODY HOLMES,

Defendant(s)

Case No. 2:25-mj-06350-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 27, 2022 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1341 | Mail Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

KEVIN MCMULLEN, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: October 10, 2025

Judge's signature

City and state: Los Angeles, California

Hon. Stephanie S. Christensen, U.S. Magistrate Judge
Printed name and title

AUSA: Monica E. Tait x2931

**AFFIDAVIT**

I, Kevin McMullen, being duly sworn, declare and state as follows:

## I.     INTRODUCTION

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since June 2021. I am currently assigned to a white-collar crime squad within the FBI's Los Angeles Field Office.  Since reporting to my first duty station in November 2021, I have been responsible for investigating complex financial crimes, including wire fraud, bank fraud, money laundering, cyber-enabled crimes, and other violations of federal law related to economic crime and corporate fraud.

2.     I received formal training at the FBI Academy in Quantico, Virginia, where I received instruction in a wide range of investigative techniques, including surveillance, interviewing, lawful search and seizure, evidence collection and preservation, and the execution of search and arrest warrants.

3.     I have participated in numerous investigations involving fraud and financial crimes.  I have reviewed financial documents, subpoenaed and analyzed banking and business records, interviewed witnesses and subjects, and worked in coordination with federal prosecutors and other law enforcement partners. Through this experience, I have become familiar with the methods and techniques used by individuals to commit and conceal white collar crimes, including the use of shell companies, falsified

documentation, misappropriation of funds, and the manipulation of accounting records.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against and arrest warrant for CODY HOLMES ("HOLMES") for a violation of 18 U.S.C. § 1341 (Mail Fraud).

5. I am working on this investigation with other agents from the FBI and the Internal Revenue Service – Criminal Investigation Division. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and amounts are approximate.

## III. SUMMARY OF PROBABLE CAUSE

6. In October 2022, the California Department of Housing and Community Development ("HCD"), a California state agency, paid approximately $25.9 million in grant funds to a developer named Shangri-La Industries, LLC ("SLI") to fund the purchase, construction, and operation of homeless housing in Thousand Oaks, California, within the Central District of California. These payments followed many millions of dollars HCD had already paid by that point to, or on behalf of, SLI to purchase,

2

construct, and/or operate homeless housing in other California municipalities.

7.   There is probable cause to believe that HOLMES, the Chief Financial Officer ("CFO") of SLI, knowingly submitted fake bank records to HCD that purported to show approximately $159 million dollars supposedly controlled by SLI or its affiliates in an attempt to prove to HCD that SLI had the capacity to fulfill the homeless housing projects for which it had co-applied for grants from HCD, including the Thousand Oaks project.  In fact, the bank accounts did not exist.  HOLMES and SLI also submitted to HCD balance sheets falsely representing that SLI-affiliated entities held millions of dollars in cash that these entities did not actually have on deposit in the known accounts for those entities.  HOLMES and SLI submitted these fake bank statements and false balance sheets with the intent that HCD should rely on them and release grant money to SLI.  After these documents were submitted to HCD, HCD paid millions more in grant money to SLI, including for the Thousand Oaks project.  HOLMES diverted at least some of the money HCD paid for the Thousand Oaks project for his own purposes.

## IV.   STATEMENT OF PROBABLE CAUSE

### A.   SLI Applied for $436,888,351 in HCD Funding

8.   Based on my knowledge of the investigation, witness interviews, review of publicly filed documents, documents produced by public and private entities, bank records, and title records, I am aware of the following:

3

a.  HCD is a California state agency.  Among other things, HCD aims to secure affordable housing for individuals experiencing or at risk of experiencing homelessness.  HCD manages a program called Homekey.  During times relevant to this affidavit, Homekey awarded grants to corporations and nonprofits, in partnership with California cities and counties, to create and provide housing for the homeless through the acquisition and rehabilitation of hotels, motels, and other buildings.  Homekey also awarded money to operate the units after acquisition and rehabilitation (sometimes called operating subsidies).  The federal government helped fund a portion of Homekey grant money between 2020 and 2022.  There were multiple rounds of Homekey funding, including Round 2 at issue here.

b.  SLI is a Los Angeles-based real estate development company.  During the times SLI was applying for Homekey grant money, HOLMES was SLI's CFO and resided in the Central District of California.  Other affiliates of SLI (collectively, with SLI, the "affiliates") included the following:  Shangri-La Development LLC ("SLD"), Shangri-La Construction L.P. ("SLC"), Shangri-La Capital, LLC ("SL Capital"), HM Land Development, LLC, and World Mechanical Inc. ("WMI").

9.  Based on my review of HCD records and bank records, and witness interviews, I am aware of the following:

a.  By April 27, 2022, SLI, in partnership with various California municipalities and a non-profit called Step Up on Second Street, Inc. ("Step Up"), had applied for

4

approximately $436,888,351 in Homekey Round 2 funding for fifteen Homekey projects, including applications for funds to acquire, renovate, and operate the properties located at 1675 Industrial Park Ave, Redlands, California ("1675 Industrial Park"); 12 Conejo Boulevard, Thousand Oaks, California ("12 Conejo"); and 1130 Broadway Street, King City, California ("1130 Broadway").  As part of these applications, SLI and/or SL Capital had also committed to spend or guarantee more than $200 million in funding for the projects.

      b.  On April 27, 2022, HCD sent letters to HOLMES, SLI Chief Executive Officer Andrew Meyers Abdul-Wahab ("Meyers"), Step Up CEO Tod Lipka, and city employees for each of the fifteen Homekey projects, including for the 12 Conejo project.  These letters (the "Capacity Analysis Request") stated that "in light of the fifteen applications that have been submitted requesting [a total of] $436,888,651 in Homekey funds, we request additional information relating to your operational and financial capacity."  Among other things, HCD requested "[e]vidence of financial capacity to support the financial commitments made to [each project] which takes into consideration the Project's position among the [whole] portfolio of applications, as supported by audited financial records."

      c.  By the time of the Capacity Analysis Request, HCD had not yet awarded the 12 Conejo project, and had awarded but not disbursed funds for the 1675 Industrial Park and 1130 Broadway projects.

**B.    SLI Provided HCD With False Bank Statements in Connection With Securing Grant Money**

10.  Based on my review of HCD records, I am aware that on May 4, 2022, SLI sent HCD a response to the Capacity Analysis Request ("Capacity Analysis Response" or "Response") aiming to demonstrate SLI's and Step Up's financial and operational capacity to manage the 15 proposed Homekey projects.

11.  Based on my review of bank records, HCD records, an FBI financial analyst's[1] analysis of SLI and its affiliates' financial statements, and interviews with HCD employees and bank employees, I believe that SLI and HOLMES included in SLI's Capacity Analysis Response fake bank records and false statements that grossly inflated the amount of cash that SLI and its affiliates had on hand.  Specifically:

  a.  The Response included a letter dated April 28, 2022, signed by HOLMES as the CFO of SLD, with the subject line "Letter of Explanation – 2020 and 2021 Financial Statements," wherein HOLMES wrote that he was submitting SLD's "internally prepared financials to accommodate HCD's request."  He also represented that he was submitting an SLD bank statement "to show the current liquid position of SLD and a very minor selection of capital resources available to SLD to assist in facilitating SLI's Homekey Round 2 projects."

    i.  The Response also attached a purported bank statement from a "Shangri-La Development LLC" Bank of America

---

[1] The analyst referred to in this affidavit is an FBI Forensic Accountant.

account with a redacted account number from the time period of March 1, 2022, to March 31, 2022, stating that this account had an ending balance of $59,283,411.81 as of March 31, 2022.

(I) Based on an interview with a Bank of America representative, I am aware that, in March 2022, SLD did not have any bank accounts at Bank of America.

(II) Based on an FBI financial analyst's analysis of all known SLI affiliates' bank accounts (including SLD), around March 31, 2022, these entities actually had a total of $24,749 in cash in their financial institution accounts, and SLD did not have any bank account in its name.

(III) For these reasons, I believe that this purported bank statement is fabricated.

ii. The Response included a document titled "Shangri-La Development, LLC And Subsidiaries Consolidated Balance Sheet," claiming that SLD and its subsidiaries had a total of $67,384,958 in their checking and savings accounts at the end of fiscal year 2021.

(I) Based on an FBI financial analyst's analysis of all known SLD and SLI-affiliated bank accounts, I am aware that at the end of calendar year 2021 (I do not know when SLD's fiscal year ended), SLD did not have a checking or savings account, and taking account of the balances of all known accounts, SLI affiliates did not have a positive cash balance.

b. The Response included a letter dated April 28, 2022, signed by HOLMES as CFO of SL Capital, with the subject line "Letter of Explanation – 2020 and 2021 Financial

7

Statements," wherein HOLMES wrote that he was submitting SL Capital's "internally prepared financials to accommodate HCD's request." He also represented that he was submitting an SL Capital bank statement "to show the current liquid position of SL Capital and a very minor selection of capital resources available to SL Capital to assist in facilitating SLI's Homekey Round 2 projects."

   i. The Response included a purported bank statement from a "Shangri-La Capital LLC" Bank of America account with a redacted account number from the time period of March 1, 2022, to March 31, 2022, which stated that this account had an ending balance of $103,928,594.05. This bank statement was addressed to "Shangri-La Captial [sic] LLC"; however, the body of the document named the accountholder as "Shangri-La Capital LLC".

   (I) Based on an interview with a Bank of America representative, I am aware that Shangri-La Capital LLC did not have any bank accounts with Bank of America in March 2022.

   (II) Based on an FBI financial analyst's analysis of all known SLI affiliates, the analyst was not able to find any evidence that SL Capital had any bank account in its name between 2021 and 2022.

   (III) For these reasons, I believe that this purported bank account statement was fabricated.

   ii. The Response included a document titled "Shangri-La Capital, LLC And Subsidiaries Consolidated Balance

8

Sheet," claiming that SL Capital and its subsidiaries had a total of $114,953,754 in their checking and savings accounts at the end of fiscal year 2021.

(I) As noted, above, the FBI financial analyst was unable to find evidence of any accounts for SL Capital during 2021. Taking account of the balances of all known accounts, SLI affiliates did not have a positive cash balance at the end of calendar year 2021 (choosing that date because I do not know when the companies' fiscal year ended).

12. Based on my review of HCD records and interviews with HCD employees, I am aware that on June 7, 2022, HOLMES sent an email using his SLI email address, cholmes@shangrila.us, to an HCD employee. In his email, HOLMES wrote, in part, the following: "[P]lease find the May bank statement for Shangri-la Capital attached. [SLI's CEO] sold an asset so he has significantly more cash on hand. I am getting the May bank statements for Bank of America that were previously provided as part of our capacity analysis, however the balances are almost the same as they were in the capacity analysis." HOLMES attached several bank statements to this email.

13. Based on my review of bank records, HCD records, an FBI financial analyst's analysis of SLI and its affiliates financial statements, and interviews with HCD employees and bank employees, I believe that the bank statements HOLMES attached on June 7, 2022 were fake and grossly inflated the amount of cash that SLI and its affiliates had on hand. HOLMES attached the following fake bank statements:

9

        a.    A purported bank statement from a SL Capital VCCU account with a redacted account number from the time period of May 1, 2022, through May 31, 2022, stating that this account had an ending balance of $75,221,579.19.

        i.    Based on an interview with a VCCU representative, I am aware that SL Capital did not have an account with VCCU in May 2022.

        ii.    Based on an FBI financial analyst's review of VCCU records, I am aware that SLI did have a VCCU account ending in 2620 ("VCCU 2620"), with a May 2022 closing balance of $5,221,579.19.

        (I)    Because of the similarity in digits in the ending balance between the real May 2022 SLI VCCU bank statement and the purported May 2022 SL Capital VCCU bank statement (that is, all but one of the digits are the same, with the purported SL Capital VCCU account ending balance exactly $70,000,000 greater), I believe that HOLMES doctored the real SLI VCCU 2620 bank statement.

        iii.    Accordingly, I believe that this purported bank statement submitted by HOLMES to HCD was fake.

        b.    A purported SL Capital Bank of America bank statement with a redacted account number from the time period of May 1 to May 31, 2022, stating that this account had an ending balance of $101,900,922.00.

        i.    As previously stated, SL Capital did not have an account with Bank of America in May 2022.

    ii. Based on an FBI financial analyst's analysis of Bank of America bank records, I am aware that no SLI-affiliated entity had an ending balance at that financial institution of $101,900,922.00 on May 31, 2022.

    iii. For these reasons, I believe that this purported bank account statement submitted by HOLMES to HCD was fake.

   c. A purported SLI BMO Harris Bank ("BMO") bank statement for SLI with a redacted account number for the time period of May 1, 2022, to May 31, 2022, stating that this account had an ending balance of $16,010,597.33 on May 31, 2022.

    i. Based on an interview with a BMO representative, I am aware that SLI did not have an account with BMO in May 2022.

    ii. Based on an FBI financial analyst's analysis of BMO bank records, I am aware that no SLI affiliates had an account at that institution with an ending balance of $16,010,597.33 on May 31, 2022.

    iii. For these reasons, I believe that this purported bank account statement submitted by HOLMES to HCD was fake.

  **C.** **HCD Paid Millions in Funds to SLI After the Capacity Analysis Response and HOLMES's Follow-up Email**

  14. Based on my review of records from HCD, City of Thousand Oaks, escrow companies, and records and information from the California State Controller's Office ("Controller"),

11

and various banks, along with interviews with HCD and City of Thousand Oaks employees, I am aware of the following:

    a.   After HCD received the Capacity Analysis Response and HOLMES's June 7, 2022 email, on or about June 28, 2022, HCD advised SLI, HOLMES, the City of Thousand Oaks, and Step Up that HCD had awarded $26.744 million in Homekey Round 2 grant funds to the 12 Conejo project.

    b.   On September 8, 2022, HCD entered into Standard Agreement number 21-HK-17425 with SLI, Step Up, and the City of Thousand Oaks to acquire, renovate, and operate 12 Conejo. On September 2, 2022, Meyers signed the agreement on behalf of SLI. Under this agreement, HCD would pay $25,974,713: $22,367,513 for capital expenditures and $3,607,200 for operating funds.

    c.   I know from reviewing documents produced by the City of Thousand Oaks that on October 4, 2022, the City agreed to contribute $1.8 million of its own money to the 12 Conejo project by paying these funds to SLI, towards construction costs.

    d.   In order for HCD to pay out its Homekey grant money, HCD provided payment directions and instructions to the Controller. After the Controller processed HCD's authorized request for payment, the Controller would issue the payments in the form of warrants (i.e., checks) from the State of California. For the 12 Conejo project, the Controller issued the following warrants at HCD's request:

i. Warrant number 62848753, dated October 27, 2022, for $6,000,000, payable to SLI at an address in Los Angeles, California.

ii. Warrant number 62873197, dated October 28, 2022, for $19,974,713, payable to SLI at an address in Los Angeles, California.

e. Information and records from a representative of the Controller's office indicates that it was the custom and practice of the Controller's office to send the above warrants by United States Mail to SLI's Los Angeles address on or about the date of issuance, and based on a review of mailing records, there is nothing to indicate that such custom and practice was not followed for these warrants.

D. **SLI Defaulted on Loans It Caused to Be Secured by 12 Conejo, and Failed to Complete Construction**

15. Based on witness interviews and review of title and bank records, I am aware of the following information regarding 12 Conejo:

a. In August 2022, HOLMES approached representatives of PMF CA REIT, LLC ("PMF") to obtain a bridge loan for the acquisition of 12 Conejo. Based on conversations with HOLMES, PMF believed that SLI was awaiting Homekey funds and would repay PMF either substantially or completely once SLI received said funds. PMF loaned an SLI-affiliated entity, 12 Conejo LP, $10,065,000, for which a Deed of Trust regarding 12 Conejo was recorded on October 4, 2022.

     i. Based on interviews with PMF and Thousand Oaks employees, I am aware that on or about June 2023, PMF representatives informed Thousand Oaks employees that SLI was at risk of defaulting on this loan. In a September 29, 2023, letter, PMF stated that SLI had defaulted on the loan.

  b. Qualfax, Inc. ("Qualfax") also loaned 12 Conejo LP $1,830,000, for which a Deed of Trust regarding 12 Conejo was recorded on October 4, 2022.

     i. On June 8, 2023, Peak Foreclosure Services, Inc. filed a Notice of Default for 12 Conejo on behalf of Qualfax.

  c. I know from my review of escrow records, as well as records from the City of Thousand Oaks in connection with the Homekey application for 12 Conejo, that 12 Conejo LP purchased the 12 Conejo property for $18,900,000 on October 3, 2022. The purchase agreement was signed by HOLMES. According to Standard Agreement number 21-HK-17425, the money HCD granted was more than sufficient to cover the purchase price of the 12 Conejo property.

16. Despite receiving funds from HCD, City of Thousand Oaks, PMF, and Qualfax, neither SLI nor its affiliates completed construction of the promised homeless housing units at 12 Conejo.

**E.  Some of the Homekey Money Paid to SLI for Homeless Housing Was Used to Pay American Express Bills for Accounts Associated With HOLMES**

17.  Based on my review of bank records and review of the same by an FBI financial analyst, I know that on October 31, 2022, and November 3, 2022, the warrants from the Controller totaling $25,974,713 to acquire, renovate, and operate 12 Conejo were deposited into a SLC BMO account ending in 1638 ("BMO 1638").  HOLMES was one of the signatories on this account.

18.  Based on an FBI financial analyst's review of bank and credit card company records, including for the BMO 1638 account, a Banc of California account ending in 5488 in the name WMI ("Banc of CA 5488," for which HOLMES was also a signatory), and American Express ("Amex") records, and my knowledge of the investigation, I learned the following:

    a.  Between November 1, 2022, and December 28, 2022, more than $2.2 million was transferred from BMO 1638 to Banc of CA 5488.

    b.  Between November 2, 2022, and May 1, 2023, more than $2,000,000 was paid towards American Express accounts in the name of Madeline Witt.  In general, the kinds of purchases made on these American Express accounts appear unrelated to SLI and its affiliates' business operations, including purchases at well-known luxury retailers.

    c.  Account records for the American Express accounts to which the above funds were paid (account identifiers 4-73007 and 2-11007) describe many of the payments as associated with

15

HOLMES (e.g., "CODY HOLMES CHECKLESS PYMT RECEIVED" and "CODY HOLMES ONLINE EPAYMENT"). In addition, on her October 2022 application for the 2-11007 account at American Express, Witt listed her address as 2210 Bowmont Drive, Beverly Hills, CA 90210, which was listed as HOLMES's address in an October 2023 deed of trust I have reviewed, signed by HOLMES before a notary public. For these and other reasons, I believe these payments were at least in part for HOLMES's benefit.

## V.  CONCLUSION

19. For all the reasons described above, there is probable cause to believe that on or about October 27, 2022, HOLMES, together with others known and unknown, knowingly and with intent to fraud, having devised a scheme and artifice to defraud HCD as to material matters, and to obtain money or property from HCD by means of false and fraudulent pretenses, representations, and promises, for the purposes of executing such scheme caused the following item to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal

//

Service: a California state warrant for $6,000,000, payable to SLI at an address in Los Angeles, California.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 10th day of October, 2025.

_____
HON. STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE